# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FLORA L. KIMBLE, ) | |
| ) | |
| Plaintiff, ) | No. 06 C 2589 |
| ) | |
| v. ) | |
| ) | Honorable Charles. R. Norgle |
| JOHN E. POTTER, Postmaster General, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is a motion for summary judgment filed on behalf of John E. Potter, Postmaster General of the United States Postal Service ("USPS"). Plaintiff Flora L. Kimble ("Kimble") is a former postal employee who alleges that the USPS discriminated against her on the basis of her age and her alleged disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Section 501 of the Rehabilitation Act, 29 U.S.C. § 791 et seq. For the following reasons, the motion is granted.

## I. BACKGROUND

### A. FACTS

The following facts are undisputed. Prior to June 1999 Kimble worked as a distribution clerk at the USPS' Irving Park Road Processing and Distribution Center (the "Irving Park Facility"). The Irving Park Facility, according to Kimble, is situated very close to O'Hare International Airport, at 11560 West Irving Park Road in Chicago, Illinois. While working at the Irving Park Facility, Kimble lived on Chicago's North Side, first at 820 Belle Plaine Avenue, then at 1810 West Chase. She commuted to work by car. The distance to the Irving Park

Facility from Kimble's home on Belle Plaine Avenue was approximately thirteen miles,[1] while the distance from Kimble's home on West Chase was approximately eighteen miles.

In June 1999 Kimble suffered a stroke. She was hospitalized from June 21, 1999 until July 2, 1999. In a letter dated July 27, 1999, Kimble's physician stated that as a result of her stroke Kimble had displayed symptoms of significant disequilibrium, though her symptoms were improving. Def.'s L.R. 56.1 Statement, Ex. G, Ltr. by Dr. John Ebihara. In the same letter Kimble's physician recommended that Kimble avoid driving long distances and that she drive during the day "to avoid any problems that may be complicated by her disequilibrium, (dizziness)." Id. The letter, however, did not indicate whether Kimble's driving was limited to a specific duration, although the parties agree that she was restricted from driving for more than thirty minutes at a time. See id.

On August 24, 1999 Kimble sent to Milton Jackson, her supervisor and the Senior Manager of Distribution Operations at the Irving Park Facility, a verification form issued by Dr. Ebihara that notified the USPS that she could resume work on September 2, 1999, provided that she not lift any object over ten pounds. In line with Dr. Ebihara's recommendations, Kimble requested that the USPS reassign her to work at a distribution facility in downtown Chicago, which was closer to her home on the North Side. The USPS granted Kimble's request and gave her a temporary detail at its main downtown facility (the "Chicago Central Facility").

During the time she worked at the Chicago Central Facility, Kimble testified that she did not need any special accommodations after she arrived at work. In fact, aside from her ten-

---

[1] When appropriate, the Court shall take judicial notice of the distances between two locations, as such information is readily ascertainable from a source whose accuracy cannot reasonably be questioned. See Lowrance v. Pflueger, 878 F.2d 1014, 1018 (7th Cir. 1989) (taking judicial notice of distance between Kenosha, Wisconsin and Tennessee); Ikerd v. Lapworth, 435 F.2d 197, 205 (7th Cir. 1970) (acknowledging that district court was entitled to take judicial notice that Madisonville, Kentucky was more than 100 miles from Terre Haute, Indiana); United States v. Bell, 357 F. Supp. 2d 1065, 1072 (N.D. Ill. 2005) (taking judicial notice of distances between locations).

pound lifting restriction, Kimble admitted that she could perform all her normal job functions. Def.'s L.R. 56.1 Statement, Ex. A., Hr'g Tr. at 11. Nevertheless, despite having no issues on the job, Kimble requested on at least four occasions that the USPS change her assignment from a temporary detail to a permanent detail located at the Chicago Central Facility. The USPS repeatedly denied her requests, explaining on at least one occasion that at the end of her temporary detail she was required to report back to the Irving Park Facility. At some point while Kimble worked at the Chicago Central Facility, she relocated to 1433 East 72nd Place on Chicago's South Side. The distance to Kimble's permanent detail, the Irving Park Facility, from Kimble's new residence on the South Side was approximately twenty-nine miles.

On April 20, 2001 the USPS informed Kimble that effective April 21, 2001 her temporary detail was cancelled and that she was required to report to the Irving Park Facility on her next scheduled work day. From that point on, Kimble did not return to work. She used all of her available vacation days and, after that, all of her sick leave. Then, Kimble requested that she be placed on Family Medical Leave without pay.

In support of her leave, Kimble asked her doctor to send the USPS a note that evidenced her incapacity to work. She did so every thirty days. The first of these notes was dated June 28, 2001 and stated that Kimble was unable to work until July 28, 2001. Def.'s L.R. 56.1 Statement, Ex. N. The second note was dated July 30, 2001 and stated that Kimble was unable to return until August 30, 2001. Id., Ex. O. The third and final note was dated August 29, 2001 and stated that Kimble was unable to return to work until September 30, 2001. Id., Ex. P. Thereafter, neither Kimble nor her physician submitted to the USPS any medical documentation regarding her capacity to work. According to Kimble's testimony, her health insurance had expired.

Meanwhile, as Kimble was working the temporary detail at the Chicago Central Facility, Joyce Baines ("Baines") became the new Supervisor of Distribution Operations at the Irving Park Facility. Because Kimble never returned to the Irving Park Facility, however, Baines did not personally know who Kimble was. In fact, Baines testified that she never met Kimble and that Kimble never worked for her personally. Nevertheless, in light of Kimble's absence, on October 3, 2001 Baines sent to Kimble a standard letter explaining that Kimble had been absent from work without justification and without providing any medical documentation that would evidence an incapacity to work after September 30, 2001. Id., Ex. Q, Baines Ltr. The letter went on, stating that "[e]mployees are required to be regular in attendance" and that Kimble's "[f]ailure to document [her] absences and continued AWOL could result in disciplinary action up to and including removal from Postal Service." Id. Kimble failed to respond.

On November 28, 2001, still without any word from Kimble, Baines sent a letter to Kimble entitled, "Notice of Removal," which, in effect, terminated Kimble's employment after thirty days. Id., Ex. R. The stated reason for Kimble's removal was her absence without official leave, otherwise known as "AWOL." The letter explained specifically that Kimble had been absent from work since September 30, 2001 and that she failed to provide acceptable documentation for her absence, thereby causing the USPS to consider her AWOL. Id. The letter also informed Kimble of her right to file a grievance and of her right to provide the USPS with an explanation of her position.

## B. PROCEDURAL HISTORY

On April 2, 2002 Kimble sought EEO counseling on a claim of disability discrimination and a failure to accommodate. In support, she cited the USPS' denial of her request for a permanent position at the Chicago Central Facility. She filed a formal EEO complaint on June

4

10, 2002, this time adding a claim for age discrimination. On February 5, 2004 the parties conducted a hearing before the EEOC. A few months later, on September 29, 2004, an Administrative Law Judge ("ALJ") issued a written decision, finding that Kimble failed to present sufficient evidence that she was disabled as defined by the Rehabilitation Act. See Pl.'s Exhibits, Ex. D at 6. Beyond that, the ALJ also determined that even if Kimble could establish that she was disabled, the USPS articulated a legitimate, non-discriminatory reason for its actions, which Kimble could not refute. Id. In the end, the ALJ found in favor of the USPS.

Operating pro se, Kimble initiated this action on May 9, 2006. She filed a first amended complaint on November 17, 2006, which the USPS answered within the allotted timeframe. Kimble eventually retained an attorney, who filed a second amended complaint on Kimble's behalf. When discovery was complete, the USPS filed this motion for summary judgment. The USPS' motion is fully briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

Summary judgment is proper when there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, and where the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Sides v. City of Champaign, 496 F.3d 820, 826 (7th Cir. 2007) (quoting Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party, who, in this case, is the Plaintiff Kimble. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 780 (7th Cir. 2007). But the court's favor toward the

nonmoving party does not relieve that party of the obligation to "do more than simply show that there is some metaphysical doubt as to the material facts." Waukesha Foundry, Inc. v. Indus. Eng'g, Inc., 91 F.3d 1002, 1007 (7th Cir. 1996) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Once the moving party has met its burden, the nonmoving party may not then rest on mere allegations to support its position, but instead "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." Trask-Morton v. Motel 6 Operating L.P., 534 F.3d 672, 677 (7th Cir. 2008). In other words, summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince the trier of fact to accept its version of the events." Steen v. Meyers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)). Further, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1104 (7th Cir. 2008) (citing Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996)).

We note that the mere existence of some alleged or possible factual dispute will not defeat an otherwise properly supported motion for summary judgment, as speculation will not suffice. Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001); see also Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001). "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors," and discrimination law would be unmanageable if disgruntled employees could defeat summary judgment on mere speculations about the defendant's motives. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1146

6

(7th Cir. 1994) (quoting Visser v. Packer Eng'g Assoc., Inc., 924 F.2d 655, 659 (7th Cir. 1991)). With these standards in mind, the Court shall determine whether Kimble's claims, based on the evidence, can withstand summary judgment.

## B. DISCRIMINATION UNDER THE ADEA

The ADEA makes it unlawful for an employer to discharge an employee because of age when the employee is over forty years old. See 29 U.S.C. §§ 623(a)(1), 631(a). To establish a claim under the ADEA, Kimble must show that her age "actually motivated" the USPS' decision to terminate her employment. Faas v. Sears, Roebuck & Co., 532 F.3d 633, 641 (7th Cir. 2008) (citing Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 489 (7th Cir. 2007)). To that end, and in light of Kimble's failure to present any direct evidence of discrimination on account of her age, she must proceed under the well-known, indirect burden-shifting method of proof established in McDonnell Douglas v. Green, 411 U.S. 792, 93 (1973). This oft-cited test requires Kimble to first establish a prima facie case of discrimination and, next, to refute her employer's stated reason for her termination as pretext. Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997); Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1261 (7th Cir. 1993). The ultimate burden of persuasion, however, remains with Kimble. Malacara v. City of Madison, 224 F.3d 727, 729 (7th Cir. 2000).

As a preliminary matter, before considering the sufficiency of Kimble's prima facie case, the Court finds that Kimble has failed to establish that a reasonable jury, considering all the evidence, would find that this case has anything to do with Kimble's age. It is well-settled that for an ADEA claim to stand, the decision to terminate the employee must be *motivated* by age. See EEOC v. Francis W. Parker Sch., 41 F.3d 1073 (7th Cir. 1994); Miller v. American Airlines, Inc., No. 03 C 7756, 2007 WL 489147, at *10 (N.D. Ill. Feb. 6, 2007). Here, Kimble has failed

7

to produce any evidence that supports a finding, even under the most liberal reading, that her termination was somehow motivated by age. Recall that Kimble's supervisor at the time of her termination, Baines, had never met Kimble because Kimble did not show up for work. What is more, Kimble failed to produce any evidence that Baines knew of Kimble's age at the time Baines made the decision to remove Kimble from service. Because of this, there is nothing from which a reasonable jury could draw even the slightest inference that Kimble's age was a motivating factor in the USPS' ultimate decision.

### *1. Prima Facie Case of Age Discrimination*

Turning to Kimble's discrimination claim, Kimble's first hurdle is to establish a prima facie case, which requires her to proffer evidence that: (1) she belongs to a protected class; (2) she was meeting the USPS' legitimate expectations; (3) she suffered an adverse employment action; and (4) the USPS sought someone to perform the same work after Kimble left the company. Pantoja v. Am. NTN Bearing Mfg. Corp., 495 F.3d 840, 846 (7th Cir. 2007) (citing Matthews v. Allis-Chalmers, 769 F.2d 1215, 1217 (7th Cir. 1985)).

There is no dispute that Kimble was a member of a protected class, that she was meeting her employer's expectations or that she suffered an adverse employment action. But Kimble failed to produce any evidence that the USPS sought someone to perform her duties after she was relieved from service. This is a critical element of her prima facie case, though Kimble neither attempts to explain her failure to produce any evidence, nor does she present the court with an argument as to why she should not be required to produce such evidence. We need not dwell on this issue, except to say that Kimble's failure to present any evidence to establish the fourth element of her prima facie case serves as a sufficient basis, on its own, to grant summary judgment in favor of the USPS.

## 2. Pretext

Even assuming that Kimble presented the Court with evidence to establish her prima facie case, because the USPS based its decision on Kimble's failure to supply it with medical documentation that evidenced her incapacity to work – a non-discriminatory reason for Kimble's termination – she is required to show that the USPS' stated reason was a mere pretext for discrimination.

An employee demonstrates pretext directly by offering evidence that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's "ostensible justification is 'unworthy of credence.'" Testerman v. EDS Technical Prods. Corp., 98 F.3d 297, 302-03 (7th Cir. 1996); see Bodenstab v. Cook County, ---F.3d---, 2009 WL 1739908, at *3 (7th Cir. June 22, 2009). While operating under the indirect method to show pretext, a plaintiff must identify such weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered reasons that a reasonable person could infer that the employer did not act for those reasons. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). And, we must keep in mind throughout this inquiry that pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is a "lie, specifically a phony reason for some action." Sublett v. John Wiley & Sons, Inc., 463, F.3d 731, 737 (7th Cir. 2006). In the end, a defendant is entitled to summary judgment if the company honestly believed in the nondiscriminatory reasons it offered, even if those reasons are foolish, trivial or even baseless. Hartley v. Wis. Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997); McCoy v. WGN Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992).

Here, Kimble does not present any direct evidence that a discriminatory reason motivated the USPS to terminate her employment. As a result, Kimble must point to any inconsistencies or

9

contradictions in the USPS' proffered reason for her termination, so that a reasonable person could infer that the USPS did not act for its stated reason. As the basis for Kimble's termination, her supervisor, Baines, testified that Kimble failed to present the USPS with acceptable medical documentation that justified her absence from work. This failure remains undisputed. Nevertheless, in response, Kimble asserts that Baines' testimony is not credible because a dispute remains as to whether Baines submitted an affidavit during the administrative investigation of Kimble's EEO complaint. This assertion is irrelevant, however, because it has nothing to do with Baines' stated reason for Kimble's termination.

A plaintiff cannot refute as pretext an employer's stated reason for terminating the plaintiff by simply calling into doubt the credibility of the person who made the decision. See Traylor v. Brown, 295 F.3d 783, 791 (7th Cir. 2002) (affirming summary judgment where plaintiff attacked employer's credibility but failed to present evidence of pretext); see also EEOC v. Target Corp., 460 F.3d 946, 960 (7th Cir. 2006) (noting that "general determinations" of credibility do not "control whether a specific hiring decision was honestly justified"). The plaintiff, rather, must attack the credibility of the employer's reason itself, and may do so by presenting evidence that the employer's explanation was contrary to the facts, insufficient to justify the action or not truly the employer's motivation. Id.; see Schuster v. Lucent Techs., Inc., 327 F.3d 569, 574 (7th Cir. 2003) (explaining that a plaintiff may show pretext through evidence that the employer's *justification* lacks credibility); Mathews v. Columbia College Chicago, 435 F. Supp. 2d 805, 816-17 (N.D. Ill. 2006). Here, Kimble failed in all respects to present the Court with any competent evidence that the USPS did not believe its reason for terminating Kimble or that the scenario was entirely implausible. Without anything more, Kimble cannot establish that

the USPS' reason for her termination was pretextual. The USPS' motion for summary judgment is therefore granted as to Count I.

## C. DISCRIMINATION UNDER THE REHABILITATION ACT

The Rehabilitation Act provides that the United States Postal Service shall not discriminate against a qualified individual with a disability solely because of his or her disability. 29 U.S.C. § 794(a). The standards used to determine whether a violation of the Rehabilitation Act has occurred are those used to interpret the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 794(d); Gile v. United Airlines, Inc., 95 F.3d 492, 497 (7th Cir. 1996). Under the ADA, a failure to make reasonable accommodations for a known disability constitutes unlawful discrimination. 42 U.S.C. § 12112(b)(5)(A). Yet, to prevail on an ADA claim, a plaintiff must show that: (1) he or she is a qualified individual with a disability; (2) the defendant was aware of his or her disability; and (3) the defendant failed to reasonably accommodate the disability. Mobley v. Allstate, Ins. Co., 531 F.3d 539, 545 (7th Cir. 2008) (citing EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005)).

In this case, the parties do not contest whether the USPS was aware of Kimble's condition. Instead, the USPS asserts that Kimble was not "disabled" as defined by the ADA, and, even if the Court finds that Kimble was disabled, the USPS had no duty to accommodate her alleged disability. The Court shall discuss each of these contentions in turn.

### 1. "Disabled" Under the ADA

The ADA protects only qualified individuals with disabilities. Thus to maintain a claim under the ADA the burden rests with Kimble to prove that at all relevant times she was disabled within the meaning of the statute. See Roth v. Lutheran Gen. Hosp., 57 F.3d 1446, 1453-54 (7th Cir. 1995). An individual is disabled under the ADA if he or she: (1) has a physical or mental

impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1059-60 (7th Cir. 2000).

Kimble bases her claim on the first definition above, arguing that she suffers from disequilibrium, a condition that precludes her from driving a vehicle for more than thirty minutes at a time. Notably, however, Kimble does not argue that her disequilibrium precludes her from working altogether – it only applies to her driving. In fact, as stated previously, when asked at the EEO hearing whether she was "able to perform all [her] duties as Distribution Clerk despite [her disequilibrium]," Kimble responded "yes" and later confirmed that she could perform all of her normal job functions once she arrived at work. Def.'s L.R. 56.1 Statement, Ex. A, Hr'g Tr. at 11. In this way, to qualify as disabled under the ADA, Kimble must establish that the act of driving a vehicle, as opposed to working, is "a major life activity" that her disequilibrium substantially limited. Under the circumstances, the Court finds that she cannot.

The EEOC has promulgated a non-exclusive list of "major life activities," which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2. Excluded from this list, however, is driving a vehicle, which many courts, including the Seventh Circuit, do not consider a major life activity in and of itself. Winsley v. Cook County, 563 F.3d 598, 603 (7th Cir. 2009); Kellog v. Energy Safety Servs., Inc., 544 F.3d 1121, 1126 (10th Cir. 2008); Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329-30 (11th Cir. 2001); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998). But this rule is not unyielding. In limited circumstances, the inability to drive could support a disability if it impairs the plaintiff's ability to work altogether. See Winsley, 563 F.3d 598. To qualify under this exception, the impairment, or inability to drive,

must substantially limit one's employment generally. This means that "an inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work." Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir. 1998). Rather, the inability to drive must restrict a plaintiff from performing a broad range of jobs in various classes. Id.

In light of the above standards, it is clear that Kimble's inability to drive for more than thirty minutes at a time does not qualify as a "major life activity." Significantly, there is nothing in the record to show that Kimble's inability to drive impaired her ability to work in general. This is not a case in which Kimble could not work; she simply could not drive for more than thirty minutes at a time. It is undisputed that even after Kimble suffered a stroke she drove a vehicle to and from work. And, once Kimble arrived at work, she did not need any special accommodations or assistance, nor did she request any. This evidence, by itself, takes Kimble outside of the exception and substantially weakens any claim that Kimble's limitation qualified as a "major life activity." As it turns out, Kimble cannot overcome the general rule that driving a vehicle is not a major life activity, and therefore she does not qualify as disabled under the ADA. The Court therefore grants summary judgment in favor of the USPS.

### 2. *Duty to Accommodate*

Finally, the USPS claims that even if Kimble was disabled it had no duty to accommodate her inability to drive. In support, the USPS cites several cases in which the district court held that an employer is not required to accommodate an employee's commute to work. See Filar v. Chi. Sch. Reform Bd. of Trs., No. 04 C 4678, 2007 WL 79290, at *6 (N.D. Ill. Jan. 5, 2007) ("activities that fall outside the scope of employment, such as commuting to and from a job location[, are] outside the responsibility of the employer under the ADA."); Cruz v. Perry,

No. 01 C 5746, 2003 WL 1719995, at *5 (N.D. Ill. Mar. 31, 2003) ("the length of [plaintiff's] commute is the result of her choice to live in the suburbs, rather than the result of any disabling condition."); Bull v. Coyner, No. 98 C 7583, 2000 WL 224807, at *7 (N.D. Ill. 2000) ("Activities that fall outside the scope of the job, like commuting to and from the workplace, are not within the province of an employer's obligation under the ADA."). Kimble gives the Court no reason to stray from these decisions. There is no dispute that the USPS was aware of Kimble's limitations and that it took measures to assist her, temporarily, in getting to and from work. But the USPS' prior assistance did not somehow obligate the USPS to continue providing assistance for purposes of the ADA. The cases cited above establish that one's commute to work falls outside the scope of his or her job. And, again, Kimble did not require assistance once she arrived at work. Rather, she preferred a shorter commute because her physician suggested that she limit her driving time to thirty minutes. Kimble did not assist herself in this endeavor by relocating to an area of the city that substantially lengthened her commute, or by ignoring altogether Chicago's extensive public transportation system. Either way, we find that Kimble's preference for a shorter commute falls outside the responsibility of the USPS. Thus the Court finds that the USPS had no obligation to accommodate Kimble for her perceived disability. Summary judgment is granted as to Count II.

### III. CONCLUSION

For the reasons stated above, the Defendant USPS' motion for summary judgment is granted against the Plaintiff Flora L. Kimble in its entirety.

IT IS SO ORDERED.

ENTER:

_____
CHARLES R. NORGLE, Judge
United States District Court

DATED: 7-13-09